# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Jaime Hernandez,                    )

                             )

           Plaintiff,         )

                             )       No. 09 C 661

          v.                )

                             )       Judge Marvin E. Aspen

COOK COUNTY SHERIFF TOM    )

DART, et al.                 )

                             )

           Defendants.     )

## MEMORANDUM OPINION AND ORDER

Presently before us is Plaintiff Jaime Hernandez's application to proceed *in forma pauperis* (IFP) and for appointment of counsel[1] in his multi-count complaint against Cook County Sheriff Tom Dart and various named Cook County Sheriff Deputies ("Defendant Deputies"), former Cook County State's Attorney Dick Devine and Assistant Cook County State's Attorneys Andrea Kirsten and Sara Karr ("State's Attorney Defendants"), Attorneys David Wessel and Russell Stewart, and Cook County Circuit Judges Maria Kuriakos-Ciesil[2] and Thomas More Donnelly (collectively, "Defendants"). Plaintiff alleges that Defendants violated various civil rights provisions and committed various common law torts against him in

---

[1] Plaintiff did not actually mark the box next to either of these selections on his IFP form submitted on April 6, 2009. However, because he checked both boxes on his previous form, which we denied (*see* Dkt. No. 4, 2/2/09 Mot. for leave to proceed IFP; 3/23/09 Order), we assume that he likewise intended to check both boxes on this form.

[2] Plaintiff names Judge Kuriakos-Ciesil as a Defendant, but never mentions her specifically in his complaint. Because we cannot determine what her role was in Plaintiff's allegations, we dismiss all claims against her. Furthermore, to the extent that any of the allegations against her would fall within her judicial capacity, we remind Plaintiff that she is entitled to judicial immunity for those claims.

connection with his arrest at the Daley Center in Chicago and his prosecution and ultimate conviction. As set forth below, we grant Plaintiff's application to proceed IFP but dismiss several counts of his Complaint. We also deny his motion for appointment of counsel.

## BACKGROUND

On February 22, 2007, Plaintiff was observing courtroom procedures in Courtroom 1506 of the Daley Center. (Compl. ¶ 7.) Plaintiff apparently often spent time serving as an "unofficial court-watcher," which includes observing courtroom proceedings, sending private reports to the Chief Judge of Cook County, and writing affidavits about his observations for indigent litigants. (*Id.* ¶ 6.) After exiting the Courtroom, several Sheriff's deputies approached Plaintiff and instructed him to leave. (*Id.* ¶ 8.) Plaintiff explained to the deputies that he was not doing anything illegal, but was serving as a court-watcher and asked why they demanded his departure. (*Id.*) The deputies arrested Plaintiff for violation of 720 ILCS 5/21-5, criminal trespass to state supported land.[3] (*Id.* ¶ 10.) Additional charges were brought against the Plaintiff, including resisting arrest, continuing to interfere with an officer's performance of his special duties, and battery. (*Id.* ¶ 11.) Plaintiff alleges that the additional charges "were manufactured out of whole cloth as 'added insurance' that one or more of them would stick in criminal court." (*Id.*) Plaintiff was tried before a jury and was convicted, although it is unclear from the Complaint of what charge(s) he was convicted. (*Id.*) Plaintiff received a 30 day jail sentence. (*Id.*)

Plaintiff is now suing the deputies involved in his arrest, the State's Attorneys involved

---

[3] Plaintiff alleges that with the assistance of Cook County Judge T.M. Donnelly, the Cook County State's Attorneys amended the charge to include the requisite element that Plaintiff was interfering with another person's lawful use or enjoyment of the land. (*Id.* ¶¶ 10-11.) However, this charge was eventually dismissed. (*Id.* ¶ 12.)

in his prosecution, the judge who sat on his criminal trial, his defense attorney, and another attorney who allegedly committed the tort of "false light" against him. Plaintiff filed his first petition for IFP and appointment of counsel on February 2, 2009. (Dkt. No. 4.) We denied that motion because Plaintiff did not fully complete the form and there were ambiguities in his responses. (*See* 3/23/09 Order.) Plaintiff filed a subsequent motion for IFP and appointment of counsel on April 6, 2009. We now consider that motion.

## STANDARD OF REVIEW

Before granting leave to file *in forma pauperis* under 28 U.S.C. § 1915, we must first determine whether Plaintiff's allegation of poverty is true. We also conduct an initial review of his claims and dismiss the action if we find that (1) it is frivolous or malicious; (2) it fails to state a claim upon which relief may be granted under Rule 12(b)(6); or (3) it seeks damages from a defendant who is immune from such relief. *See* 28 U.S.C. §1915(e)(2)(A), (B)(I-iii). As to the second factor, failure to state a claim, we apply the test for dismissal under Rule 12(b)(6), which requires that a complaint must only "contain enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 522, 570, 127 S. Ct. 1955, 1974 (2007); *see also George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007). Because Plaintiff is proceeding *pro se*, we have a responsibility to construe his complaint liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). It is the "well established duty of the trial court to ensure that claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-39 (7th Cir. 1987). Furthermore, "this initial assessment of the [IFP] plaintiff's factual allegation must be weighted in favor of the plaintiff." *Denton v. Hernandez*, 504 U.S. 25, 32, 112 S. Ct. 1728, 1733 (1992).

**ANALYSIS**

**I. Indigence**

Regarding his allegation of poverty, Plaintiff has submitted a financial affidavit, which states that he has been unemployed since November 11, 2008, and that he has received a total of $308.00 in unemployment compensation since then. (Fin. Aff. ¶¶ 2, 4.) Plaintiff is legally married, but is separated from his spouse and does not know her salary. (*Id.* ¶ 3.) Plaintiff states that he has two dependents, his son and his grandson.[4] (*Id.* ¶ 10.) Plaintiff further testifies that although he owns a home and a garage – apparently related to his former business, Aztec Trucking, Inc. – he owes close to $80,000 in back taxes on those properties. (*Id.* ¶ 7.) Plaintiff also owns a 2009 Honda Civic, but owes monthly loan payments for it in the amount of $350.58. (*Id.* 8.) Based on these facts Plaintiff's annual income is well below the $18,310 poverty threshold for a three-person household. (*See* Health and Human Services 2009 Poverty Guidelines). Although Plaintiff owns property, the amount he owes in taxes on that property would likely prevent him from being able to utilize the property as leverage, and we will not ask the Plaintiff to attempt to do so. Accordingly, Plaintiff has adequately alleged poverty and demonstrated that he is unable to pay the filing fee.

**II. Sufficiency of Allegations under Rule 12(b)(6)**

As a preliminary matter, we note that Plaintiff's thirty-page complaint asserts seventeen counts, most of which are presented in a duty/breach framework. Plaintiff consistently alleges that Defendants had a duty not to commit various acts and that they breached that duty by

---

[4] Despite our clear instructions in our March 23, 2009 Order, Plaintiff did not state whether he is entirely responsible for the dependents or list the specific amount he contributed to them.

committing that act. (*See, e.g.*, Compl. ¶¶ 15, 17,18 (asserting a false imprisonment claim by alleging that Plaintiff had a right to be free from being falsely imprisoned, that Defendants had a duty not to falsely imprison him, and that they breached said duty when they imprisoned and arrested him).) Nonetheless, because Plaintiff is *pro se* and we are determining whether he may proceed IFP, we give his allegations the most liberal interpretation possible, within reason.

## A. False Imprisonment and False Arrest Claims

In counts one and two, Plaintiff alleges that, despite the fact that he was doing nothing illegal, the Defendant Deputies falsely arrested and imprisoned him. (Compl. ¶¶ 8, 13-32.)"The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was retained or arrested by the defendant[s], and that the defendant[s] acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 474, 564 N.E.2d 1222, 1231 (Ill. 1990); *see also Schor v. Daley*, 563 F. Supp. 2d 893, 900 (N.D. Ill. 2008). At this stage of initial review and drawing all inferences in favor of the Plaintiff, he has sufficiently stated claims for false arrest and false imprisonment.[5] *See Denton*, 504 U.S. at 32, 112 S. Ct. at 1733; *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 414 (7th Cir. 1997).

## B. Malicious Prosecution

In order to state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must demonstrate that: "(1) he has satisfied the requirements of a state law cause of action for

---

[5] Because statutes of limitations are not jurisdictional, but are affirmative defenses that the defendant must raise, *Day v. McDonough*, 541 U.S. 198, 206, 126 S. Ct. 1675, 1681 (2006); *Dandy v, UPS, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004); *United States v. Ross,* 77 F.3d 1525, 1536 (7th Cir. 1996), we will not address any possible statute of limitations issues at this stage.

malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of his liberty." *Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir. 1998). Under Illinois law, a plaintiff must allege that "(1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Id.* at 480-81 (quoting *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)). Plaintiff cannot satisfy the fourth element for malicious prosecution under Illinois law. In his complaint, Plaintiff admits that he was convicted by a jury. (Compl. ¶ 11.) Accordingly, we dismiss his claim for malicious prosecution.[6]

## C. Violation of Right to Petition the Government for Redress of Grievances & Retaliation

Plaintiff alleged that Defendants violated his First Amendment right to petition the government for redress of grievances by preventing him from returning to the courtroom to continue serving as a court-watcher. (Compl. ¶ 47.) The right to petition the government for redress of grievances includes the right of access to the courts. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 613 (1972); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). The right of access to the courts, however, generally only applies to

---

[6] In count fourteen, Plaintiff apparently attempts to reallege the malicious prosecution claim and other claims against the State's Attorney Defendants. His allegations are entirely insufficient to state a claim. As discussed below, we dismiss all of the specific claims against the State's Attorney Defendants found in separate counts. Accordingly, count fourteen, which is entirely duplicative of the other named counts, is dismissed. To the extent that Plaintiff is attempting to assert a separate and independent allegation against the State's Attorney Defendants in count fourteen, he has not provided enough information for us, or them, to determine what that allegation is. Plaintiff apparently recognizes that this count is insufficient when he states that "[t]he many transgressions, arrogations, usurpations, predations, crimes and torts which were committed by these prosecutors will be explicated in amended versions of this complaint." (Compl. at 24.)

those seeking judicial relief.  *See Bridges*, 557 F.3d at 553-54 (explaining that plaintiff's submission of an affidavit in a lawsuit in which he was not a party "was not a constitutionally protected exercise of his right to access the courts").  Plaintiff's allegation that his service as a court-watcher was protected by the right to petition the government is without merit.  Plaintiff was not a party to the suits in which he served as a court-watcher and his role was even more tangential that the affiant in *Bridges*.  Because Plaintiff's contention that serving as a court-watcher is protected by the right to access the courts is without merit, his claim for violation of that right fails.

Plaintiff also alleges that Defendants retaliated against him for the exercise of his constitutional and other protected rights.  (Compl. ¶¶ 71-79.)  To state a First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."  *Bridges*, 557 F.3d at 553 (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).  Plaintiff does not specifically state what constitutionally protected behavior precipitated Defendants' retaliatory action.  (*See* Compl. ¶ 75 (claiming generally that Defendants retaliated against him for "[h]is exercise of [h]is constitutional rights when [t]hey imprisoned [h]im, arrested [h]im, maliciously prosecuted [h]im, and deprived [h]im of [h]is right to seek redress of grievances").)  If we assume that the underlying behavior at issue was his service as a court-watcher, his claim must fail because, as discussed above, that behavior is not constitutionally protected.  Given Plaintiff's *pro se* status and the level of review given to an IFP petition, however, we could infer that Plaintiff is alleging

that Defendants retaliated against him for his First Amendment-protected speech activity. (*See* Compl. ¶ 4 (alleging that Plaintiff commonly voiced his concerns about the government by posting letters he sends to government officials on his website, demonstrating outside of buildings, passing out reading material, and filing legal actions).)

Even assuming that the First Amendment activity for which Defendants retaliated against Plaintiff was his speech activity, Plaintiff has not alleged that this activity "was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges*, 557 F.3d at 553 (quoting *Woodruff*, 542 F.3d at 551). Instead, Plaintiff states that the Defendants had a duty not to retaliate against him and that they breached that duty and deprived him of his right to be "free from retaliation for [h]is exercise of [h]is constitutional rights." (Compl. ¶ 75.) That conclusory statement is not sufficient for us to infer that Defendants were motivated to act by Plaintiff's speech activity. Plaintiff did not allege that Defendants knew about his prior speech conduct, that he was commonly known for such conduct, or that he was engaged in such protected conduct at the time of his arrest. Because Plaintiff has not sufficiently alleged that Defendants were motivated by his First Amendment activity, his claim for retaliation is dismissed.

**D. Due Process Violation**

In count five, Plaintiff alleges that Defendants "deprived Plaintiff of [h]is protected liberty and property interests to due process of law when [t]hey imprisoned [h]im, arrested [h]im, maliciously prosecuted [h]im, and deprived [h]im of [h]is right to seek redress of grievances in a manner that was arbitrary, *ad hoc*, unreasonable, unduly financially burdensome, and unnecessarily inconvenient." (Compl. ¶ 56.) However, "[a] plaintiff cannot state a due process

claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'" *Brooks v. City of Chi.* 564 F.3d 830, 833 (7th Cir. 2009) (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 1228 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, that claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870-71 (1989) (same). Plaintiff's due process claim is simply a re-hash of his false arrest, false imprisonment, and malicious prosecution claims. Thus, this claim is dismissed.

**E. Alienation of Spousal Affection**s

Plaintiff alleges that Defendants had a duty "not to tortuously [sic] interfere with the spousal affection of Plaintiff's wife," and that they did interfere by imprisoning him, arresting him, and maliciously prosecuting him. (Compl. ¶¶ 63-66.) Plaintiff further contends that his time in jail resulted in his wife leaving him. (*Id.* ¶ 68.) To state a claim for alienation of affections, Plaintiff must allege: "(1) love and affection of the alienated spouse for the plaintiff; (2) actual damages; and (3) overt acts, conduct, or enticement by the defendants causing those affections to depart." *Schroeder v. Winyard*, 375 Ill. App. 3d 358, 364, 873 N.E.2d 35, 40 (2d Dist. 2007). Illinois courts have interpreted the third element as requiring a plaintiff to demonstrate that the defendant[s] acted with "willful intent." *Id.* (citing *Wheeler v. Fox*, 16 Ill. App. 3d 1089, 1093-94, 307 N.E.2d 633, 636-37 (4th Dist. 1974)). Additionally, the Alienation of Affections Act, 740 ILCS 5/0.01 *et seq.*, has limited the common law tort of alienation of

spousal affections and such claims "'have been subjected to close and strict judicial scrutiny within very narrow limits both in pleading and proof.'" *Id.* (quoting *Coulter v. Renshaw*, 94 Ill. App. 3d 93, 95, 418 N.E.2d 489, 490 (2d Dist. 1981)).

Plaintiff's claim for alienation of spousal affection is dismissed because he has not adequately alleged actual damages or willful intent on behalf of the defendants. Illinois requires "an allegation of actual pecuniary loss" to establish actual damages for alienation of spousal affection claims. *Coulter*, 94 Ill. App. 3d at 95, 418 N.E.2d at 490. Plaintiff has not alleged any pecuniary loss. Furthermore, Plaintiff has not even come close to alleging that Defendants possessed a willful intent to separate Plaintiff from his wife. Accordingly, we dismiss this claim.

## F. Equal Protection Clause

In count eight, Plaintiff alleges that Defendants treated him differently than other citizens because of his race, in violation of the Equal Protection Clause and § 1983. (Compl. ¶ 84 ("Defendants . . . deprived Plaintiff of [h]is protected . . . interests in equal protection of the law when they singled [h]im out as an ethnic minority.").) Although Plaintiff's allegations are somewhat vague, it is quite simple to state a claim for racial discrimination in violation of the Equal Protection Clause. *See Brown v. Budz*, 398 F.3d 904, 916 n.1 (7th Cir. 2001) ("Indeed, this court has held that an allegation as simple as 'I was turned down a job because of my race' is all a complaint has to say to plead sufficiently race discrimination in violation of the Equal Protection Clause.") (internal quotations omitted). Accordingly, Plaintiff's Equal Protection claim stands. However, it may only stand as against the Defendant Deputies. Plaintiff's allegation that the State's Attorney and Assistant State's Attorneys violated the Equal Protection Clause by maliciously prosecuting him must fail because he has not (and cannot) sufficiently

allege malicious prosecution.  *See* discussion *supra* Part II.B.  To succeed on a claim for malicious prosecution in violation of the Equal Protection Clause, a plaintiff must not only allege the elements of a malicious prosecution claim, but also that he was discriminated against based on his membership in a protected class.  *See Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994); *Lorenzana v. Mette*, No. 94 C 6861, 1995 WL 461860, at *3, n.5 (N.D. Ill. Aug. 2, 1995).  Thus, Plaintiff's Equal Protection claim against the State's Attorney Defendants is dismissed.

Additionally, this claim must be dismissed against the remaining Defendants.  First, as discussed below, Judge Donnelly is entitled to judicial immunity.  Furthermore, nothing in the Complaint supports Plaintiff's blanket statement that all defendants were acting under the color of State law such that Attorney David Wessel and Attorney Russell Stewart may be held liable for violation of the Equal Protection Clause.  "In order to state a claim under [§] 1983, a plaintiff must allege that the defendants deprived him of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law."  *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).  Although a private citizen cannot typically be held liable under § 1983, "if a private citizen conspires with a state actor, then the private citizen is subject to [§] 1983 liability."  *Id.* at 1016; *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000).  Wessel and Stuart were private citizens and were not employed by the state.  Therefore, they can only be liable under § 1983 via conspiracy.  However, Plaintiff does not adequately allege that Wessel and Stuart conspired with state actors to deprive him of his constitutional rights.  *See* discussion *infra* Part II.G.  Accordingly, any allegation that Wessel and Stewart violated the Equal Protection Clause in violation § 1983 must be dismissed.

**G. Conspiracy and Negligence in Preventing Conspiracy**

Count nine asserts a common law civil conspiracy claim and federal statutory civil conspiracy claims under 42 U.S.C. § 1985(2) and (3). Section 1985(2) contains two clauses that create two distinct causes of action. *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). The first clause prohibits conspiracies that interfere with federal judicial proceedings, and the second prohibits conspiracies that "obstruct the course of justice in state courts." *Kush v. Rutledge*, 460 U.S. 719, 725, 103 S. Ct. 1483, 1487 (1983). Although Plaintiff does not specify which clause is at issue, the second clause is the only one that could possibly be implicated by Defendants' actions. The second clause of § 1985(2) applies when "two or more persons conspire for the purpose of impeding, hindering, obstructing, defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws . . . ." 42 U.S.C. § 1985(2). Accordingly, to state a claim under § 1985(2), the plaintiff must allege that the defendants entered into a conspiracy to interfere with justice in a state court. In addition, under both the second clause of § 1985(2) and under § 1985(3), a plaintiff must allege class-based animus. *Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir. 1995) (explaining that the second clause of §1985(2) and §1985(3) require an allegation of "class-based invidious discriminatory animus"); *Wright*, 40 F.3d at 1507. In addition to the class-based animus requirement, to establish a claim for civil conspiracy under § 1985(3), a plaintiff must also allege: "(1) the existence of a conspiracy, . . . [(2)] an act in furtherance of the alleged conspiracy, and [(3)] an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw*, 235 F.3d at 1024.

Plaintiff's § 1985(2) and (3) and common law conspiracy claims fail because he has not

adequately alleged the existence of a conspiracy. *Copeland v. Nw. Mem'l Hosp.*, 964 F. Supp. 1225, 1235 (N.D. Ill. 1997) ("It is not enough for a section 1985 plaintiff to plead mere conclusory allegations of a conspiracy."); *see also Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (requiring plaintiff to plead "that the conspirators agreed to inflict injury upon him" in accordance with a single plan, "the general nature and scope of which was known to each conspirator"); *Brooks v. Ross*, No. 08 C 2417, 2008 WL 5082995, at *7 (N.D. Ill. Nov. 25, 2008) (explaining that pleading civil conspiracy under Illinois law and Federal Rule of Civil Procedure 8(a)(2) "'still requires a 'showing,' rather than a blanket assertion of entitlement to relief'") (quoting *Twombly*, 550 U.S. at 556 n.3, 127 S. Ct. at 1965). Plaintiff never states that the Defendants actually agreed (explicitly or implicitly) to conspire against him; he simply asserts that they breached their duty not to civilly conspire against him. (Compl. ¶ 96.) There is nothing in the extensive background section of Plaintiff's complaint from which we can infer that all Defendants came to an agreement to conspire against Plaintiff, nor does he allege what it is that the Defendants conspired to do, other than to generally "depriv[e] [h]im of the equal protection of the laws." (Compl. ¶ 93.) In fact, the few statements that might support Plaintiff's allegation of conspiracy are vague and speculative. (*See, e.g.*, Compl. ¶ 11 ("[A]ctually, the orders for Plaintiff's persecutory arrest undoubtedly evidently came from an unknown person much higher up in the law enforcement and/or political chain of command, as usually happens in these cases of unlawful penalty for the exercise of his constitutional rights.").) Accordingly, we dismiss Plaintiff's conspiracy claims.

Count ten alleges that all Defendants violated 42 U.S.C. § 1986, which establishes liability for "[e]very person who, having knowledge that any of the wrongs conspired to be done,

and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so." 42 U.S.C. § 1986. This claim must fail because Plaintiff's underlying § 1985 claim is dismissed. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 643 (7th Cir. 2006) ("[T]o be actionable, [§ 1986] requires a violation of § 1985."); *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3); without a violation of § 1985(3), there can be no violation of § 1986.").

**H. RICO Claims**

Plaintiff also alleges that Defendants violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. (Compl. ¶¶ 111-26.) "To secure standing to sue under RICO, [Plaintiff] must first present the court with evidence that he incurred an injury to his 'business or property' within the meaning of [18 U.S.C. § 1964]." *Evans v. City of Chi.*, 434 F.3d 916, 924-25 (7th Cir. 2006). Plaintiff's alleged injury to his "business or property" is that he was compelled to spend money defending himself in criminal court and that he lost the ability to earn money while he was jailed. (Compl. ¶ 124.) However, in *Evans*, the Seventh Circuit refused to recognize such injury as injury to "business or property." 434 F.3d at 925-26 (holding that the plaintiff's injuries – the loss of potential income during his incarceration and his attorney's fees for his defense – were not "business or property" injuries within the meaning of § 1964). Because Plaintiff's injuries do not constitute "business or property" injuries, he does not have standing to pursue civil RICO liability against the Defendants.

## I. False Light Claim

In count twelve, Plaintiff asserts a false light claim against David Wessel and Deputy Eric Gross. (Compl. at 23.[7]) Plaintiff alleges that when he was observing court procedures in Courtroom 1506 of the Daley Center on February 2, 2007, David Wessel, an attorney representing a party in a case for which Plaintiff was observing, spoke with Deputy Gross and pointed at Plaintiff. Soon after, Gross "spoke into his radio that there were three people in the courtroom causing a disturbance." (*Id.*) Thereafter, Plaintiff left the courtroom. From these facts, Plaintiff alleges that we may infer that Wessel caused Deputy Gross to state that Plaintiff caused a disturbance, which led to his arrest. (*Id.*) Accordingly, Plaintiff contends that he has stated a claim for the tort of false light invasion of privacy. We disagree.

Under Illinois law, to state a claim for false light invasion of privacy, a plaintiff must plead that:

> (1) he or she was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.

*Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 695, 742 N.E.2d 425, 434-35 (1st Dist. 2000); *see also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003). Plaintiff cannot satisfy these elements because he has not alleged that Wessel or Gross acted with actual malice and he has not alleged that the statement was transmitted to the public. Although Plaintiff states that "Wessel proximately caused Eric Gross to unjustifiably transmit the

---

[7] Beginning on page 23, Plaintiff terminated his use of paragraph numbers. References to the complaint past page 23 will be to the page numbers.

information" (Compl. at 23), that allegation is not an allegation of actual malice. In fact, he does not even state that the statement was false or that the Defendants acted in reckless disregard for whether the statement was true or false.

Moreover, Illinois courts have adopted the public disclosure requirements of the Restatement (Second) of Torts, which states: "'[A]ny publication in a newspaper or magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large evidence, is sufficient to give publicity.'" *Kurczaba*, 318 Ill. App. 3d at 697, 742 N.E.2d at 435 (quoting Restatement (Second) of Torts, § 652D, comment *a*, at 384-85 (1977)). Additionally, Illinois courts have found the public disclosure element to be satisfied when, although the disclosure is to a small class of people, the plaintiff has a special relationship with those people. *Id.*; *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 980, 560 N.E.2d 900, 903 (1st Dist. 1990). However, Plaintiff has not alleged that the statement was made public in any of the above manners. Although he alleged that Deputy Gross transmitted a statement via his hand-held radio, the radio clearly contemplated by the Illinois cases and the Restatement is not a police radio, but a radio for public entertainment purposes. For the reasons stated above, this claim is dismissed.

**J. Claims against Judge Donnelly**

Plaintiff asserts various claims against Judge Donnelly, including illegal seizure, denial of due process, violation of the Equal Protection Clause, violation of his First Amendment right to petition the government for redress of grievances, and others. (Compl. at 23.) In particular, Plaintiff alleges that Judge Donnelly coached the prosecution to amend the complaint, refused to accept amicus curiae briefs, refused to allow Plaintiff to use his "counsel of associates" for his

defense, refused to permit Plaintiff to fire his attorney, disregarded controlling authority, and refused to issue a jury instruction that Plaintiff requested. (*See* Compl. at 23-24.) However, Judge Donnelly is immune from these allegations. A judge is entitled to absolute judicial immunity for "acts performed by the judge 'in the judge's *judicial capacity*.'" *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005) (quoting *Dellenback v. Letsinger*, 889 F.2d 755, 759 (7th Cir. 1989). All of the acts complained of by the Plaintiff are acts within Judge Donnelly's judicial capacity. Accordingly, he is entitled to immunity for those acts.

## K. Failure to Train and Supervise

As with virtually all of Plaintiff's other claims, Plaintiff frames his claim for "common law negligence as failure to train and supervise" by asserting that Defendants had a duty to "adequately train and supervise [t]heir employees in a manner so that [t]heir employees would not abuse the People's, including Plaintiff's, rights by committing crimes and torts against [t]hem and [h]im." (Compl. ¶ 128.) He further asserts that Defendants breached this duty when they "negligently failed to properly train and/or supervise" the Defendants. (*Id.* ¶ 130.) Although Plaintiff does not specifically state which Defendants were responsible for the failure to train, we assume he is referring to Cook County Sheriff Dart.[8] Plaintiff is apparently alleging that Dart's failure to train his employees caused Plaintiff's constitutional violations. Although Plaintiff attempts to frame this as a common law negligence action, it is more properly classified as a § 1983 official capacity *Monell* claim against Dart for failure to train the Defendant

---

[8] Although Plaintiff may have intended to bring this allegation against Former Cook County State's Attorney, Dick Devine, we have dismissed all of the underlying allegations against the State's Attorney Defendants. To the extent that this claim included allegations against Devine, it is dismissed because Plaintiff failed to state a claim for the underlying constitutional violation, malicious prosecution.

Deputies because Plaintiff's alleged injury was a constitutional deprivation.

To state a § 1983 claim against a municipality or an officer sued in his official capacity, "the complaint must allege that an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007); *see also Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2035 (1978); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) (explaining that "[w]hen a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself"). In cases alleging a policy of inadequate training or supervision, the Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989). Here, Plaintiff has not alleged that the inadequate training of Defendant Deputies amounted to deliberate indifference. In fact, Plaintiff affirmatively pleads that the inadequate training was only negligent, not deliberately indifferent. (*See* Compl. ¶ 130 (alleging that "[t]hey negligently failed to properly train and/or supervise" Defendants).) This allegation is insufficient to state a claim under § 1983 for failure to train. *See City of Canton*, 489 U.S. at 390-92, 109 S. Ct. at 1205-06 (rejecting a gross negligence standard for § 1983 failure to train liability). Accordingly, Plaintiff's claim for failure to train is dismissed.

**L. Intentional Infliction of Emotional Distress**

Plaintiff also alleges a claim for intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 138-48.) He asserts that the Defendants "intentionally . . . inflicted emotional

distress upon Plaintiff when they committed various torts against Plaintiff complained of in the proceeding s." (*Id.* ¶ 141.) Plaintiff also alleges that the commission of those torts was "extreme and outrageous" because the Defendants "were Plaintiff's trusted public servants, elected and/or hired by the State of Illinois or agencies thereof, for the purpose of effecting the constitutional purposes thereof." (*Id.*) He further claims to have experienced emotional distress. (*Id.* ¶ 143.)

To state a claim for IIED in Illinois, a plaintiff must allege that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused severe emotional distress." *Doe v. Calumet City*, 161 Ill. 2d 374, 392, 641 N.E.2d 498, 506 (Ill. 1994), *overruled in unrelated part by In re Chi. Flood Litig.*, 176 Ill. 2d 179, 196, 680 N.E.2d 265, 273 (Ill. 1997); *see also Cook v. Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998). Liability for IIED "does not extend to mere insult, indignities, threats, annoyances, petty oppressions or trivialities" and can attach "only in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 935, 803 N.E.2d 619, 625 (1st Dist. 2004). We use an objective standard to determine whether conduct is extreme and outrageous. *Doe*, 161 Ill. 2d at 392, 641 N.E.2d at 507. Plaintiff has broadly alleged that all of the tortious actions taken against him constitute extreme and outrageous conduct. Although we cannot say at this point whether each and every action taken against Plaintiff was extreme and outrageous, at least some of the allegations, such as Plaintiff's alleged false arrest and imprisonment, could constitute extreme and outrageous conduct. However, because we have dismissed the various underlying claims against the other

Defendants, we limit Plaintiff's allegation for IIED to include only those allegations against the Defendant Deputies. (*See* Compl. ¶¶ 141-43.) Accordingly, at this stage of review, he has stated a claim for IIED.

## M. Legal Malpractice against Russell Stewart

Plaintiff also asserts a legal malpractice claim against Russell Stewart, the attorney that represented him during the underlying criminal proceedings. (Compl. at 25.) Plaintiff alleges that Stewart negligently represented him by failing to raise numerous issues, filing a motion in limine, insufficiently cross examining witnesses, and failing to submit jury instructions and special interrogatories. (*Id.*) Although Plaintiff's legal malpractice claim is a state law claim, we may exercise supplemental jurisdiction over it if it is "so related to" the claims for which we have original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). We determine whether the claims are part of the same case or controversy by determining whether they "'derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient.'" *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). However, it is not enough that the claims be tangentially related. *Chaney v. City of Chi.*, 901 F. Supp. 266, 270 (N.D. Ill. 1995). Plaintiff's legal malpractice claim is not part of the same case or controversy as his remaining civil rights claims. *See Zimmerman v. City of Eau Claire*, No. 06-085, 2006 WL 2546727, at *2-3 (W.D. Wis. Aug. 29, 2006). The remaining claims over which we have original jurisdiction are Plaintiff's claims for false imprisonment and false arrest, and his claim against the Defendant Deputies for violation of the Equal Protection Clause. These claims are

based on the alleged actions by the Defendant Deputies at the Daley Center and immediately thereafter.  (*See* Compl. ¶¶ 7-11.)  His allegation of legal malpractice is based entirely on Stewart's alleged negligence in representing him at trial and is independent of his alleged false arrest and false imprisonment.  Accordingly, we decline to exercise jurisdiction over his legal malpractice claim against Stewart.

### III.  Motion for Appointment of Counsel

In order for us to grant a motion for appointment of counsel in a civil matter, the plaintiff must show that he has made a reasonable effort to secure private counsel, or show that he was effectively precluded from doing so.  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007); *Johnson v. Doughty*, 433 F.3d 1001, 1006-09 (7th Cir. 2006); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995).  In addition, the plaintiff must also appear incapable of proceeding without representation.  *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).  We require a litigant to submit documentation that demonstrates his efforts and the refusal of various attorneys to accept his case.  *See Benford v. Cahill-Masching*, No. 03 C 2643, 2003 WL 22669036, at *1 (N.D. Ill. Nov. 10, 2003).  Plaintiff has not submitted any documentation of his efforts to secure counsel, nor has he even state that he has attempted to do so.  Additionally, Plaintiff has not explained why his case is particularly complex at this stage.  The legal issues raised by Plaintiff's claims do not appear so complex or intricate that a trained attorney is necessary at this early stage.  For the foregoing reasons, we deny Plaintiff's motion for appointment of counsel without prejudice.

### IV.  Miscellaneous

We remind the Plaintiff and Defendants that this case is not deemed "filed" until we grant the Plaintiff's petition to proceed IFP or, if we were to deny that petition, Plaintiff pays the filing

fee. *See* L.R. 3.3(d). Accordingly, Defendant Russell Stewart's motion to dismiss and Plaintiff's additional filings are unnecessary. Plaintiff filed a motion for extension of time on May 29, 2009, apparently seeking leave to extend the time in which he may issue service on Defendant Wessel.[9] However, pursuant to Rule 4(c)(3), the United States Marshals will be ordered to serve Defendants because Plaintiff is authorized to proceed IFP. Fed. R. Civ. P. 4(c)(3). Therefore, Plaintiff's motion for extension of time is denied as moot. Moreover, as we have declined to exercise jurisdiction over Plaintiff's legal malpractice claim against Russell Stewart, we strike Stewart's motion to dismiss.

## CONCLUSION

For the foregoing reasons, we grant Plaintiff's application to proceed *in forma pauperis* but dismiss s counts three - seven, nine - fifteen, and Plaintiff's claim for common law negligence as failure to train and supervise. Plaintiff may proceed with his false arrest, false imprisonment, Equal Protection and IIED claims against former Cook County Sheriff Devine and the Defendant Deputies. Plaintiff's motion for an extension of time is denied as moot and Defendant Russell Stewart's motion to dismiss is stricken. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Date: June 10, 2009

_____

[9] Plaintiff also seems to be seeking some sort of relief related to the delay in receiving the transcripts from his underlying criminal trial. (Mot. for Extension of Time ¶ 2.) Although we doubt such transcripts are necessary or relevant to the remaining counts, we cannot determine what sort of relief he is seeking.